UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------ x
TRUSTEES OF THE LOCAL 1034 PENSION
TRUST FUND; TRUSTEES OF THE LOCAL
813 INSURANCE TRUST FUND; and
TRUSTEES OF THE NURSES AND LOCAL
813 IBT RETIREMENT TRUST FUND,

                Plaintiffs,

       -against-

PYRAMID FUNERAL SERVICE OF
BROOKLYN, INC.

                Defendant.
------------------------------------------------------------ x

**REPORT AND RECOMMENDATION**

25-CV-996 (DG)(PK)

**Peggy Kuo, United States Magistrate Judge:**

Plaintiffs Trustees of the Local 1034 Pension Trust Fund ("Pension Fund"), the Local 813 Insurance Trust Fund ("Insurance Fund"), and the Nurses and the Local 813 IBT Retirement Fund ("Nurses Fund") (collectively, "Funds"), brought this action against Defendant Pyramid Funeral Service of Brooklyn, Inc. ("Pyramid") pursuant to the Employment Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001, *et seq.*[1] (Am. Compl., Dkt. 11.) Plaintiffs have moved for default judgment against Pyramid. (Plaintiffs' Motion for Default Judgment ("Motion"), Dkt. 20; *see also* Plaintiffs' Memorandum of Law ("Mem."), Dkt. 20-1.) The Honorable Diane Gujarati referred the Motion to me for a report and recommendation. For the reasons stated herein, I respectfully recommend that the Motion be granted.

---

[1] The Amended Complaint alleges controlled group liability claims against XYZ Corporations 1-10 ("XYZ Defendants") and John and Jane Does 1-10 ("Doe Defendants") pursuant to 29 U.S.C. §§ 1082(b)(2), 1451(a)(1). Plaintiffs voluntarily dismissed these claims on June 17, 2025. (*See* Notice of Voluntary Dismissal, Dkt. 19.)

1

**BACKGROUND**

**I.      Factual Background**

The following facts are taken from the Amended Complaint (Dkt. 11), the Declaration of Shanae Johnson ("Johnson Decl.," Dkt. 20-2), and the Declaration of Neil V. Shah, Esq. ("Shah Decl.," Dkt. 20-10), and are accepted as true for purposes of the Motion. *See Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009).

Plaintiffs are the trustees of the Funds, which are jointly-administered, multi-employer, labor-management trust funds established and maintained pursuant to collective bargaining agreements. (Am. Compl. ¶¶ 9-10.)

Pyramid entered into a collective bargaining agreement with Local Union No. 813, International Brotherhood of Teamsters ("CBA"). (Johnson Decl. ¶ 3; *see* CBA, Ex. A to Johnson Decl., Dkt. 20-3.) Pursuant to the CBA, Pyramid was required to remit contributions to the Funds for each week its employees performed work covered by the CBA. (Am. Compl. ¶¶ 2, 14; *see* CBA §§ 19-21.) The amount of contributions that Pyramid must remit is calculated by multiplying the number of weeks for which its employees performed covered work by the corresponding weekly rate set forth in the CBA. (Johnson Decl. ¶ 6; *see* CBA §§ 19-21.)

In the CBA, Pyramid agreed to adopt and be bound by the Funds' trust agreements as they may be amended and the rules and regulations adopted by Plaintiffs.[2] (CBA § 26(a), (c); *see* "Pension Fund Trust Agreement," Ex. B to Johnson Decl. Dkt. 20-4; "Insurance Fund Trust Agreement," Ex. C to Johnson Dec., Dkt. 20-5; "Nurses Fund Trust Agreement," Ex. D to Johnson Decl., Dkt. 20-6

---

[2] The original versions of the Trust Agreements that the CBA refers to are: (1) "Agreement and Declaration of Trust dated October 19, 1965 for the Pension Fund," (2) "Agreement declaration of Trustees [] dated February 13, 1952 Insurance Trust Fund," and (3) "Agreement and Declaration of Trust dated September 18, 1962 for the Severance and Retirement Trust Fund," which was later renamed as the "Nurses and Local 813 IBT Retirement Fund." (*See* CBA § 26(c); *see also* Nurses Fund Trust Agreement at 1.)

2

(collectively, "Trust Agreements").) Moreover, Pyramid agreed to submit monthly remittance reports identifying the employees who performed covered work and the number of days per week they performed that work. (Johnson Decl. ¶ 7; CBA § 26(a); *see* "Remittance Reports," Ex. F to Johnson Decl., Dkt. 20-8.)

Under the terms of the respective Trust Agreements, interest on delinquent contributions to the Insurance and Pension Funds accrues at 1.5% per month. (Pension Fund Trust Agreement ¶ 9.4(d)(5); Insurance Fund Trust Agreement § 9.4(d)(5).) Interest on delinquent contributions to the Nurses Fund accrues at the prime rate in effect on the date the contributions were due. (Nurses Fund Trust Agreement Art. VIII § 3.)

The Pension Fund adopted withdrawal liability procedures governing the assessment and collection of withdrawal liability. (Johnson Decl. ¶ 5; *see* Local 1034 Pension Fund Withdrawal Liability Procedures ("Withdrawal Liability Procedures"), Ex. E to Johnson Decl., Dkt. 20-7.) The Withdrawal Liability Procedures provide that interest on delinquent payment of withdrawal liability accrues at 1.5% per month from the due date until the date on which the payment is made, and for each day in a partial month, at a fixed rate of 0.05% per day. (Withdrawal Liability Procedures at 12 (ECF pagination).)

Between April 2023 and January 2024, Pyramid remitted contributions to the Funds using lower, incorrect rates, thereby resulting in delinquent contributions.[3] (Johnson Decl. ¶¶ 7-8; Shah Decl. ¶¶ 8-10 at 3-4[4]; *see* "Damages Chart," Ex. D to Shah Decl., Dkt. 20-14.)

---

[3] In the Amended Complaint, Plaintiffs allege delinquent contributions through August 2024 (Am. Compl. ¶ 3), but Plaintiffs clarified at the inquest that they are seeking delinquent contributions from August 2023 through January 2024 as alleged in their memorandum of law. (Oct. 21, 2025 Minute Entry and Order.)

[4] The paragraph numbering for the Shah Declaration is incorrect, resulting in two sets of paragraphs 7, 8, and 9. (Shah Decl. at 2-3.) The paragraphs referenced here are the second set, appearing on pages 3-4.

On October 25, 2024, Plaintiffs notified Pyramid that Pyramid had effectuated a complete withdrawal from the Pension Fund. (Am. Compl. ¶ 17; *see* "Notice of Withdrawal Liability," Ex. G to Johnson Decl., Dkt. 20-9.) Plaintiffs further notified Pyramid that, "[w]hile the withdrawal liability would normally be payable in Two Hundred Forty (240) monthly payments of $573.63 each . . . there is a substantial risk [Pyramid] will be unable to pay its withdrawal liability because of [its] outstanding contribution delinquencies" and demanded an "immediate payment of $137,671.20" in accelerated withdrawal liability by November 6, 2024. (Notice of Withdrawal Liability at 1-2.)

Pyramid has not made any payments on the delinquent contributions or withdrawal liability, nor has it requested a review of the withdrawal liability or commenced arbitration within the prescribed deadlines pursuant to Sections 4219 and 4221 of ERISA, 29 U.S.C. §§ 1399 and 1401. (Am. Compl. ¶ 18.)

## II. Procedural History

Plaintiffs filed the Amended Complaint on April 22, 2025. (Dkt. 11.) As relevant here, the Amended Complaint alleges claims against Pyramid for delinquent contributions (*see* Section 515 of ERISA, 29 U.S.C. § 1145) and withdrawal liability (*see* Section 4201(a) of ERISA, 29 U.S.C. § 1381(a)).

Plaintiffs effectuated service on Pyramid by delivering copies of the Summons and Amended Complaint to the New York Secretary of State on April 23, 2025, but Pyramid did not appear or otherwise answer the Complaint. (Aff. of Service, Dkt. 13.) A certificate of default was entered against Pyramid on May 13, 2025. (Dkt. 16.)

Plaintiffs moved for default judgment against Pyramid on June 17, 2025. (*See* Motion.)

The Court held an inquest at which Plaintiffs clarified that no attorneys' fees or costs are being sought in connection with the Motion, and they are seeking delinquent contributions from August 2023 through January 2024, not through August 2024 as alleged in the Amended Complaint. (Oct. 21, 2025 Minute Entry and Order.) In addition, Plaintiffs confirmed that Pyramid permanently ceased

4

business operations as of August 1, 2024. (*Id.*) The Court identified some miscalculations in Plaintiff's damages chart and granted leave to supplement the Motion, which they did on October 28, 2025. ("Supplemental Letter," Dkt. 22; *see also* "Revised Damages Chart," Ex. 1 to Supplemental Letter, Dkt. 22-1; "Supplemental Remittance Report," Ex. 2 to Supplemental Letter, Dkt. 22-2.)

## DISCUSSION

### I. Default Judgment Standard

Rule 55 of the Federal Rules of Civil Procedure prescribes a two-step process for entry of a default judgment. First, when a defendant "has failed to plead or otherwise defend," the Clerk of Court enters the defendant's default. Fed. R. Civ. P. 55(a). The plaintiff may then move the court for an entry of default judgment. Fed. R. Civ. P. 55(b)(2). However, "just because a party is in default, the plaintiff is not entitled to a default judgment as a matter of right." *GuideOne Specialty Mut. Ins. Co. v. Rock Cmty. Church, Inc.*, 696 F. Supp. 2d 203, 208 (E.D.N.Y. 2010).

The Court may "first assure itself that it has personal jurisdiction over the defendant." *City of N.Y. v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 133 (2d Cir. 2011) (cleaned up). Plaintiffs must demonstrate proper service of the summons and complaint, *see Advanced Cap. Com. Grp., Inc. v. Suarez*, No. 09-CV-5558 (DRH)(GRB), 2013 WL 5329254, at *2 (E.D.N.Y. Sept. 20, 2013), and establish compliance with the procedural requirements of Local Civil Rules 7.1 and 55.2.

In addition, the Court must also determine whether Plaintiffs' "allegations establish [the defendant's] liability as a matter of law." *Finkel*, 577 F.3d at 84; *see also Mickalis*, 645 F.3d at 137. In considering a motion for default judgment, a court accepts a plaintiff's "factual allegations as true and draw[s] all reasonable inferences in [the plaintiff's] favor . . . ." *Finkel*, 577 F.3d at 84. However, a default is "not considered an admission of damages." *Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992). "The plaintiff bears the burden of presenting proof of damages, which may take the form of documentary evidence or detailed affidavits." *Joe Hand Promotions, Inc. v.*

*Benitez*, No. 18-CV-6476 (ARR)(PK), 2020 WL 5519200, at *3 (E.D.N.Y. Aug. 27, 2020), *R&R adopted*, 2020 WL 5517240 (E.D.N.Y. Sept. 14, 2020).

A court "possesses significant discretion" in granting a motion for default judgment, "including [determining] whether the grounds for default are clearly established . . . ." *Klideris v. Trattoria El Greco*, 10-CV-4288 (JBW) (CLP), 2011 WL 7114003, at *2 (E.D.N.Y. Sep. 23, 2011), *R&R adopted*, 2012 WL 273078 (E.D.N.Y. Jan. 30, 2012).

## II. Jurisdiction

### A. Subject Matter Jurisdiction

Plaintiffs allege violations of Sections 515 and 4201(a) of ERISA, 29 U.S.C. §§ 1145, 1381(a). Thus, the Court has original jurisdiction over Plaintiffs' ERISA claim pursuant to Sections 502(e)-(f) and 4301(c) of ERISA, 29 U.S.C. §§ 1132(e)-(f) and 1451(c).

### B. Service of Process

Plaintiffs served Pyramid by delivering copies of the Summons and Amended Complaint to the New York Secretary of State. *See* N.Y. Bus. Corp. L. § 306(b)(1); Fed. R. Civ. P. 4(h)(1)(B). (Aff. of Service, Dkt. 13.) Service on Pyramid was, therefore, proper.

### C. Personal Jurisdiction

"Serving a summons . . . establishes personal jurisdiction over a defendant . . . who is subject to the jurisdiction of a court of general jurisdiction in the state where the district court is located." *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 673 F.3d 50, 59 (2d Cir. 2012) (quoting Fed. R. Civ. P. 4(k)(1)(A)). New York State has general jurisdiction over corporations formed under its laws and operating within the state. *See Francis v. Ideal Masonry, Inc.*, No. 16-CV-2839 (NGG)(PK), 2018 WL 4292171, at *3 (E.D.N.Y. Aug. 3, 2018), *R&R adopted*, 2018 WL 4288625 (E.D.N.Y. Sep. 7, 2018).

Because Pyramid is a New York corporation and was properly served, the Court has personal jurisdiction over it.[5]

### III. Procedural Compliance with Local Civil Rules 7.1 and 55.2

As part of the Motion and in compliance with the Local Civil Rules, Plaintiffs included a Notice of Motion (Dkt. 20), *see* Loc. Civ. Rule 7.1(a)(1); a Memorandum of Law (Dkt. 20-1), *see* Loc. Civ. Rule 7.1(a)(2); a declaration showing that the Clerk has entered default (Shah Decl.), *see* Loc. Civ. Rule 55.2(a)(1); a Proposed Default Judgment Order detailing the proposed judgment to be entered (Dkt. 20-15), *see* Loc. Civ. Rule 55.2(a)(2); proof of having mailed the motion papers to Pyramid at its last known business address (Dkt. 20-16), *see* Loc. Civ. Rule 55.2(a)(3); and a statement of damages affirmed by someone with personal knowledge (Johnson Decl.; Shah Decl.), *see* Loc. Civ. Rule 55.2(c). Thus, compliance with the Local Civil Rules is satisfied.

### IV. Liability

#### A. Delinquent Contributions Liability

ERISA enables participants and beneficiaries of a "multiemployer plan" to seek relief for violations, or to enforce provisions, of such a plan. *See* Section 4301(a) of ERISA, 29 U.S.C. § 1451(a). ERISA defines a qualifying "multiemployer plan" as a "plan . . . to which more than one employer is required to contribute," and "is maintained pursuant to one or more collective bargaining agreements between one or more employee organizations and more than one employer." Section 3(37) of ERISA, 29 U.S.C. § 1002(37).

---

[5] The Amended Complaint alleges that Pyramid is "a for-profit domestic corporation having its principal place of business at 2625 Harway Avenue, Brooklyn, New York 11214" (Am. Compl. ¶ 11), and the Court takes judicial notice that the New York Department of State identifies Pyramid as a New York corporation. *See Moreno v. Cap. Concrete NY Inc.*, No. 24-CV-3120 (NGG) (PK), 2025 WL 2555609, at *5 n.2 (E.D.N.Y. Sep. 5, 2025); *Weddington v. Sentry Indus., Inc.*, No. 18-CV-10055 (PKC), 2019 WL 5212355, at *1 n.1 (S.D.N.Y. Oct. 16, 2019) (collecting cases).

Section 515 of ERISA requires "[e]very employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or . . . a collectively bargained agreement" to "make such contributions in accordance with the terms and conditions of such plan or such agreement." 29 U.S.C. § 1145.

Here, the Funds are "jointly-administered, multi-employer, labor-management trust funds established and maintained pursuant to collective bargaining agreements," and have "multiemployer plans" within the meaning of Section 3 of ERISA, 29 U.S.C. § 1002. (Johnson Decl. ¶ 4; Shah Decl. ¶ 5.) The Funds qualify as "multi-employer plans." (*See* Johnson Decl. ¶ 4.)

The CBA required Pyramid to remit contribution to the Funds on behalf of employees who performed covered work at the rates set forth in the CBA. (Am. Compl. ¶¶ 2, 14; CBA §§ 19-21.) Plaintiffs allege that, for work performed by its employees between April 2023 and January 2024, Pyramid remitted contributions using lower, incorrect rates, thereby resulting in delinquent contributions. (Shah Decl. ¶¶ 8-9 at 3.) These allegations are sufficient to establish Pyramid's liability under Section 515 of ERISA, 29 U.S.C. § 1145, for failing to make contributions in accordance with the CBA.

**B. Accelerated Withdrawal Liability**

Pursuant to Section 4201(a) of ERISA, 29 U.S.C. § 1381(a), "If an employer withdraws from a multiemployer plan in a complete withdrawal or a partial withdrawal, then the employer is liable to the plan in the amount determined under this part to be the withdrawal liability." *ILGWU Nat. Ret. Fund v. Levy Bros. Frocks, Inc.*, 846 F.2d 879, 881 (2d Cir. 1988) ("The purpose of withdrawal liability 'is to relieve the funding burden on remaining employers and to eliminate the incentive to pull out of a plan which would result if liability were imposed only on a mass withdrawal by all employers.'" (quoting H.R. Rep. No. 96-869, pt. 1, at 67 (1980))). A complete withdrawal occurs when an employer

8

"(1) permanently ceases to have an obligation to contribute under the plan, or (2) permanently ceases all covered operations under the plan." Section 4203(a) of ERISA, 29 U.S.C. § 1383(a).

When an employer withdraws from a plan, plan sponsors must notify the employer of the amount of the liability and the schedule for liability payments, and demand payment in accordance with the schedule. Section 4219(b)(1) of ERISA, 29 U.S.C. § 1399(b)(1). However, "if any event defined by the rules governing the plan . . . indicates a substantial likelihood that an employer will be unable to pay its withdrawal liability . . . the employer is deemed in default and the plan sponsor may accelerate the withdrawal liability." *Trs. Of Loc. 813 Pension Tr. Fund v. Argento Rubbish Removal, Inc.*, No. 22-CV-5683 (FB)(PK), 2023 WL 5961658, at *4 (E.D.N.Y. Aug. 21, 2023), *R&R adopted as modified*, 2023 WL 5956787 (E.D.N.Y. Sep. 13, 2023).

"ERISA permits an employer, within 90 days after receiving withdrawal liability notice under Section 4219(b)(1) of ERISA, 29 U.S.C. § 1399(b)(1), to request a review of the plan sponsor's determination of withdrawal liability and schedule of payments, identify any inaccuracy in the withdrawal liability determination, or furnish any additional relevant information to the plan sponsor." *Id.* (citing Section 4219(b)(2)(A) of ERISA, 29 U.S.C. § 1399(b)(2)(A)). ERISA also requires that disputes concerning the plan's assessment of withdrawal liability be settled through arbitration. Section 4221(a)(1) of ERISA, 29 U.S.C. § 1401(a)(1). "If the employer does not challenge the withdrawal liability determination . . . any arbitration must be initiated within 180 days of the plan sponsor's withdrawal liability demand." *Argento*, 2023 WL 5961658 at *5 (citing Section 4221(a)(1) of ERISA, 29 U.S.C. § 1401(a)(1)).

As of August 1, 2024, Pyramid (1) permanently ceased business operations and (2) permanently ceased to have an obligation to contribute to the Funds. (Am. Compl. ¶ 16; Oct. 21, 2025 Minute Entry and Order.) On October 25, 2024, Plaintiffs notified Pyramid that Pyramid had effectuated a complete withdrawal from the Pension Fund as of August 1, 2024 and demanded an

9

immediate payment of $137,671.20 in accelerated withdrawal liability in view of the "substantial risk [Pyramid] will be unable to pay its withdrawal liability because of [its] outstanding contribution delinquencies." (*See* Notice of Withdrawal Liability; *see also* Am. Compl. ¶ 17; Johnson Decl. ¶ 11.)

At the time Plaintiffs filed the Complaint, more than 180 days had passed since Pyramid received the Notice of Withdrawal Liability. Pyramid did not initiate arbitration or challenge Plaintiffs' determination of Pyramid's accelerated withdrawal liability. (Am. Compl. ¶ 27; Johnson Decl. ¶ 12.) To date, Pyramid has not made any payment of its withdrawal liability. (Am. Compl. ¶ 26; Johnson Decl. ¶ 12.) These allegations are sufficient to establish Pyramid's liability for unpaid withdrawal liability under Section 4201(a) of ERISA, 29 U.S.C. § 1381(a).

**V.     Damages**

Plaintiffs request that Pyramid be ordered to pay (1) $1,921.72 in delinquent contributions, $589.94 in accrued interest, and $592.30 in liquidated damages (*see* Revised Damages Chart)[6]; and (2) $137,671.20 in accelerated withdrawal liability, $15,212.67 in accrued interest, and $27,534.24 in liquidated damages. (Supplemental Letter at 2.)

**A.  *Delinquent Contributions***

Pursuant to Section 502(g)(2) of ERISA, 29 U.S.C. § 1132(g)(2), where a "judgment in favor of the plan is awarded" for delinquent contributions under Section 515 of ERISA, 29 U.S.C. 1145, a plaintiff is entitled to an award of "1) the amount of unpaid contributions; 2) interest on the unpaid contributions; 3) liquidated damages; 4) reasonable attorney's fees and costs; and 5) such other legal and equitable relief as the court deems appropriate." *Lanzafame v. Toquir Contracting, Inc.*, 545 F. Supp. 2d 255, 258 (E.D.N.Y. 2007); Section 502(g)(2) of ERISA, 29 U.S.C. § 1132(g)(2); *see Iron Workers Dist.*

---

[6] In the Supplemental Letter, Plaintiffs incorrectly state that they seek $592.02 in liquidated damages for the delinquent contributions. (Supplemental Letter at 2.)

10

*Council of W. N.Y. & Vicinity Welfare & Pension Funds v. Hudson Steel Fabricators & Erectors, Inc.*, 68 F.3d 1502, 1507 (2d Cir. 1995). Plaintiffs do not seek attorneys' fees or costs.

Plaintiffs calculated the amount of delinquent contributions based on Pyramid's monthly remittance reports and the rates set forth in the CBA. (Johnson Decl. ¶ 7; *see* CBA §§ 19-21.) Plaintiffs' calculations show that Pyramid failed to remit contributions of $1,921.72 to the Funds from April 2023 to January 2024, consisting of $309.22 to the Pension Fund, $1,569.50 to the Insurance Fund, and $43.00 to the Nurses Fund. (Shah Decl. ¶ 9; Johnson Decl. ¶ 8; Remittance Reports, Ex. F to Johnson Decl., Dkt. 20-8; Supplemental Remittance Report.)

In light of the evidence provided by Plaintiffs, I find that Plaintiffs have met their burden of proving these damages with "reasonable certainty." *See Annuity, Pension, Welfare, Training & Lab. Mgmt. Coop. Tr. Funds of Int'l Union of Operating Eng'rs Loc. 14-14B, AFL-CIO by Christian v. CM Ashland Constr. Corp.*, 780 F. Supp. 3d 405, 413 (E.D.N.Y. 2025); *Credit Lyonnais Sec. (USA), Inc. v. Alcantara*, 183 F.3d 151, 155 (2d Cir. 1999).

Accordingly, I respectfully recommend that Plaintiffs be awarded **$1,921.72** in delinquent contributions.

### 1. Interest Accrued on Delinquent Contributions

Plaintiffs seek interest on delinquent contributions from the due date until the date the Motion was filed on June 17, 2025 at a rate of 1.5% per month for the Insurance and Pension Funds, and at the monthly prime rate on the date the contributions were due for the Nurses Fund. (Shah Decl. ¶ 10; Pension Fund Trust Agreement § 9.4(d)(5); Insurance Fund Trust Agreement § 9.4(d)(5), Nurses Fund Trust Agreement art. VIII § 3.) Plaintiffs ascertained the applicable prime rate for the Nurses Fund by using the tool published by the Federal Reserve Bank of St. Louis. (Shah Decl. ¶ 10.)

11

Plaintiffs' calculations show that a total of $589.94 has accrued in interest from April 2023 to June 17, 2025, consisting of $96.07 to the Pension Fund, $487.63 to the Insurance Fund, and $6.24 to the Nurses Fund. (*See* Revised Damages Chart.) I find no error in Plaintiffs' calculations.

Accordingly, I respectfully recommend that Plaintiffs be awarded **$589.94** in interest on delinquent contributions.

### 2. Liquidated Damages on Delinquent Contributions

Pursuant to the Trust Agreements, Plaintiffs are entitled to liquidated damages, which are the greater of 20% of the unpaid contributions or the accrued interest. (Pension Fund Trust Agreement ¶ 9.6(c); Insurance Fund Trust Agreement § 9.6(c); Nurses Fund Trust Agreement Art. VIII § 3.) For the Pension Fund and Insurance Fund, the accrued interest is greater than 20% of the unpaid contributions. (*See* Revised Damages Chart.) For the Nurses Fund, 20% of the unpaid contributions is greater than the accrued interest. (*See* Revised Damages Chart.) Plaintiffs' calculations show a total of $592.30 in liquidated damages on delinquent contributions, consisting of $96.07 for the Pension Fund, $487.63 for the Insurance Fund, and $8.60 for the Nurses Fund. (*See* Revised Damages Chart.) I find no error in Plaintiffs' calculations.

Accordingly, I respectfully recommend that Plaintiffs be awarded **$592.30** in liquidated damages for delinquent contributions.

### B. Accelerated Withdrawal Liability

Plaintiffs seek $137,671.20 in accelerated withdrawal liability. Plaintiffs calculated this amount by multiplying the monthly payments of $573.63 by the maximum period of two years permitted by Section 4219 of ERISA, 29 U.S.C. § 1399. (Notice of Withdrawal Liability at 2, 5 (ECF pagination).) "If, as here, the employer fails to ask for review within 90 days and fails to initiate arbitration, then the employer waives any right to contest the amount of withdrawal liability." *Trs. of Loc. 1034 Pension Tr. Fund v. Superior Limousine Serv., Inc.*, No. 22-CV-5684 (RPK)(CLP), 2024 WL 4664668, at *7

12

(E.D.N.Y. Aug. 18, 2024) (citing 29 U.S.C. §§ 1399(b)(2), 1401(a)(1)). "Once the employer fails to initiate such arbitration and waives its right to contest the amount of withdrawal liability assessed by the plan sponsor, the district court will not make an independent determination as to the reasonableness of the calculations." *Id.*

Here, Plaintiffs notified Pyramid that Pyramid had effectuated a complete withdrawal from the Pension Fund on October 25, 2024, and demanded payment of $137,671.20 in accelerated withdrawal liability by November 6, 2024. (*See* Notice of Withdrawal Liability.) Because Pyramid never requested review of the amount nor sought arbitration within the period set by statute, any challenge to the amount has been waived. *See Superior Limousine*, 2024 WL 4664668, at *7.

Accordingly, I respectfully recommend that Plaintiffs be awarded **$137,671.20** in accelerated withdrawal liability.

1. **Interest Accrued on Accelerated Withdrawal Liability**

Plaintiffs seek interest accrued on the accelerated withdrawal liability that Pyramid failed to pay. Interest on unpaid withdrawal liability is calculated from the due date until the date on which the payment is made. *See* 29 C.F.R. § 4219.32(d) (noting that "the due date from which interest accrues shall be, for an overdue withdrawal liability payment and for an amount of withdrawal liability in default, the date of the missed payment that gave rise to the delinquency or the default"). Plaintiffs only seek interest accrued from November 6, 2024, the date full payment was due, until June 17, 2025, the day the Motion was filed, a period of 7 months and 12 days.[7] (Supplemental Letter at 1.)

---

[7] Plaintiffs calculate the number of months and days elapsed between November 6, 2024 and June 17, 2025 as seven months and 11 days. (Supplemental Letter at 1.) However, Plaintiffs are entitled to interest accrued from the date the accelerated withdrawal liability was due, *i.e.*, a period of seven months and 12 days. *See* 29 C.F.R. § 4219.32(a)(1).

13

Pursuant to the Withdrawal Liability Procedures, the applicable rate of interest is 1.5% per month, and for each day in a partial month, at a fixed rate of 0.05% per day. (Withdrawal Liability Procedures at 12 (ECF pagination).)

Multiplying the accelerated withdrawal liability of $137,671.20 by 1.5% for 7 months and by 0.05% for 12 days, the total interest owed between November 6, 2024 and June 17, 2025 is $15,281.50.

Accordingly, I respectfully recommend that Plaintiffs be awarded **$15,281.50** in interest on accelerated withdrawal liability.

### 2. Liquidated Damages on Withdrawal Liability

Pursuant to the Withdrawal Liability Procedures, Plaintiffs are entitled to liquidated damages in the amount equal to the greater of the interest due or 20% of the withdrawal liability. (Withdrawal Liability Procedures § 12.) Here, the 20% of the withdrawal liability—$27,534.24—is greater than the accrued interest. (Shah Decl. ¶ 14.)

Accordingly, I respectfully recommend that Plaintiffs be awarded **$27,534.24** in liquidated damages.

### CONCLUSION

Based on the foregoing, I respectfully recommend that the Motion for Default Judgment be granted and that Pyramid be ordered to pay Plaintiffs the following:

- $1,921.72 in delinquent contributions;
- $589.94 in interest on delinquent contributions;
- $592.30 in liquidated damages for delinquent contributions;
- $137,671.20 in accelerated withdrawal liability;
- $15,281.50 in interest on accelerated withdrawal liability; and
- $27,534.24 in liquidated damages for accelerated withdrawal liability.

This results in a total award of **$183,590.90**.

Any written objections to this Report and Recommendation must be filed within 14 days of service of this report. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Failure to file objections within the specified time waives the right to appeal any order or judgment entered based on this Report and Recommendation. *Caidor v. Onondaga Cnty.*, 517 F.3d 601, 604 (2d Cir. 2008).

SO ORDERED:

*Peggy Kuo*
PEGGY KUO
United States Magistrate Judge

Dated:   Brooklyn, New York
         December 8, 2025